Council, it's an honor to be here before you today. My name is Ray Bell and I represent the appellant and plaintiff in the underlying lawsuit, Argonaut Great Central Insurance Company. Today we are seeking reversal of the summary judgment entered by the district court against our client and in favor of the underlying defendants in the case, the Lincoln County defendants, as well as the judgment on the pleadings that was entered in the favor of the Lincoln County defendants as well. Council, if you would speak more directly into the mic so we can hear you a little better. Certainly. Thank you, Your Honor. Your Honor, the basis for the district court's ruling in the underlying case on our determination that there was no actionable, wrongful acts committed by or alleged by the underlying defendants, the Lincoln County defendants, in the lawsuit which involved the unfortunate murder of Betsy Fariha on December 27, 2011. My client, Argonaut, issued a policy which did not go into effect until January 1, 2012. The trial court, the district court, entered its determination that the, relying heavily on the particular case, the Lee's Summit case, which is cited and discussed by both sides in the briefing, which is an occurrence policy. The Argonaut policy is significantly different from an occurrence policy in terms of the law enforcement coverage part, which provides coverage for wrongful acts, but which contains what is sometimes termed as a femur clause, that the wrongful acts, all acts, errors, or omissions committed by the insureds that are substantially the same are deemed to constitute one wrongful act. The policy also specifically provides that the coverage is afforded only if the wrongful act was first committed during the policy period. The first wrongful act was committed on December 28, 2011, in the early morning hours, shortly after the late-night murder on December 27 of Betsy Fariha. Well, under Lee's Summit, it seems to be the fighting point is you look to win in a malicious prosecution case, in a case involving law enforcement pursuit of someone unlawfully or wrongfully, you look for the time when the charge was made. Correct, Your Honor. Why is that not applicable here? It's not applicable for several reasons. First and foremost, again, the policy language is different. This is not an occurrence policy, and the definition of wrongful act in the covering provision, coverage provision for wrongful act, is not similar to the policy. Secondly, the facts of that case and the holding in that regard was determined based upon the particular facts at issue. In Lee's Summit, there were not issues as to damages that occurred prior to the first charge. What damage occurred here before there was an actual charge? There were damages alleged from laid out quite specifically throughout the introduction of the underlying petition for several counts, only one of which is malicious prosecution. Several of the counts were based upon constitutional violations pertaining to the Fourth and Fourteenth Amendments. Also, a conspiracy allegation against all the were conspiring to convict Mr. Faria improperly of the murder of Betsy Faria, rather than the investigating properly and making a determination that and following up on who was believed to be the murderer. I get that argument, but I keep kind of hanging up on on this question of like, well, how far back does this actually relate and how does the relation back actually work as to where the first acts are? Because here's the thing. If you look at it, people can be completely and entirely on the wrong path, confused, and effectuate a detention of someone, right? So they detain him, they question him. Somebody has been murdered. The person who's been detained has made a statement that is plainly inconsistent with the physical evidence. I mean, I think she committed suicide. All of a sudden, you look at this body at the multiple stab wounds and say, that doesn't fit, right? And so all of a sudden you say, okay, we're concerned. And we're concerned because we have a person who apparently had access, a person who apparently has misrepresented the nature of the scene, and so we're going to question that person. Perfectly okay. We'd expect police to do that. Certainly. Then the next thing we'd expect the police to do if they weren't satisfied is they'd say, we think we have sufficient evidence to detain. They detain for some period of time, right? Now, it's not until later when you start looking at the alibi that's been offered, but the physical evidence that would, which would tend to support the alibi, and say, well, look, we can count for every minute he was and he's not being able to bilocate, seems unlikely that he was the man who did this. Which is really the heart of all the claims. They all boil down to, you ignored exculpatory evidence. You covered up exculpatory evidence. You failed to proceed with a thorough investigation. You ignored the one person who might in fact be the, well, who was undoubtedly the last person to see her alive, who offered a story that ultimately didn't hold water, and of course hindsight is something completely different, but it seems to me that to just have it all sort of relate back to the very beginning, why is that appropriate when it seems that before December 31st, it seems like all the stuff the police were doing, while it turned out was misguided, foolish, and not appropriate, that it was at that point in good faith. There didn't seem to be any conspiracy going on. And so that's my question, is what, you know, and I get, I mean, I can understand where the difference between claims made policies and occurrence policies and the definition of occurrences as they're defined in the two policies makes Lee's summit not particularly compelling authority. I get that. But what I'm trying really hard to figure out is why does the relatively innocent conduct at the very beginning relate back? Well, I don't think that that is necessarily innocent conduct that relates back, and that's certainly not how it's alleged and not how the facts that are laid out in the petition are alleged. Right. And I, of course, I'm bound by what's pled, not my spin on the fact, right? Certainly. And some of those included damages, well, and the damages claimed were the unlawful detention beyond, the improper arrest, detention beyond 24 hours in violation of Missouri statute, the providing of a fake or faux lie detector test at a time when he was under, had taken marijuana fairly recently, that he was sleep deprived, having been in sleep, not slept for over 30 hours, I believe 32 or 34 hours. The count one, which was premised on the, these initial seizure, the false arrest, initial false arrest keeping beyond that 24-hour period, alleged damages for that unlawful detention, emotional distress, loss of reputation, physical restraint of liberty, and sought punitive damages among other types of damages, including attorney's fees and intentional infliction of emotional distress. So. And taken at its face, well pled, that imposes the obligation and the duty to defend on Missouri, whatever the name of that company is. Yes, MOPRM is the, what it's called frequently. And that they're on notice that the claim originated during their policy provision, and then all the subsequent stuff, in your view, would then relate back anyhow. So whatever you've got, it would be excess coverage, if at all, and you have no duty to defend because the primary duty to defend rests with the. Right. And that is the secondary argument that we lay out pertaining to the other coverage that's in place and the lack of a duty to defend on that basis. But the primary issue in our mind is the fact that a wrongful, wrongful acts did begin in 2011 and those were deemed to, by the merger clause, because they were related and were similar and expanded on that. And that is really the basis of insurance coverage is that you are insuring for unknown risks. And here, on December 31st at midnight, if Argonaut were advised, here's the situation we have, here are the factual allegations, are you going to insure us or not, beginning on January 1, and be responsible for what has occurred the last few days, and I think everybody would conclude that the answer would be no. So going to the reasonable expectations of the parties, that's, which is an argument that was raised by Lincoln County defendants, that is an argument which favors Argonaut in that no one could reasonably expect that Argonaut would have taken on this coverage at that particular time with the information of the allegations and the facts that had occurred to that date. I think it's also very important to note the case, Lee's summit case is not dispositive on that issue. It is related, but the real holding of that was that it's, even though it was an occurrence policy, was first actually damaged. So it's not necessarily if the facts of the case are going to differ, and here we have several accounts beyond that of malicious prosecution. First actually damaged was, again, earlier in December 27, December 28 timeframe, so we believe that the case does not support the district court's ruling and is not dispositive of the issues that we have here. I do want to point out a couple of quick things, really. It was pointed out in the Appellee's Account 1, ended up being dismissed, and I will also, that it's a matter of judicial notice, I'll point out that that matter was dismissed on stipulation of the parties. It was initially sought to be dismissed without prejudice. It ended up being dismissed with prejudice when the district court would not dismiss it without prejudice. And also, the basis for that dismissal was that the representation that there was insufficient evidence that Sergeant McCurrick was not authorized to, or was authorized to release Mr. Faria. So that is of no import, even if it's considered by the court, which it should not because it was well after summary judgment had been granted. Thank you, Your Honors. I'll reserve my time for rebuttal. Thank you. Mr. Martin. Good morning, Your Honors. May it please the Court, I'm Paul Martin. I'm here representing what I refer to as the Lincoln County Defendants, and we're asking the Court to affirm the district court's judgment in their favor. I'd like to go in a different direction and look at this case from the interpretation of the policy. And the guidelines of interpreting an insurance contract, at least one guideline that I'd like to emphasize, is that found in Seek v. Geico Insurance, cited in the brief in which the Missouri Supreme Court said, in construing the terms of an insurance policy, the Court applies the meaning which would be attached by an ordinary person of average understanding of purchasing insurance. Now, earlier Missouri court cases say that what that means is we're not talking about the interpretation of a lawyer, a contract specialist, an insurance company representative. We're talking about the interpretation of an average Joe buying insurance. And that is reinforced by the Aetna case cited in the brief in which the Court said the language must be construed so as to give the insured the protection which he reasonably had a right to expect. And to that end, any doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor. Now, with that, I'd like to turn to the coverage language of the Argonaut policy. On its face, it provides that the company has a duty to provide protection provided the wrongful act is committed during the course and scope of law enforcement activities and is first committed during the policy term. And that's at the joint appendix, volume one, page 279. Applying this language to the Faria complaint, counts two through six of the complaint essentially assert a claim for wrongful arrest and conviction of Mr. Faria. And there are four individual Lincoln County employees who are the target of that constitutional claim. These people on the face of the pleadings were involved in the case in 2012 after the Argonaut policy went into effect. There isn't any question about that. So I would submit that these county deputies looking at these facts and looking at this policy would look at that coverage language and say, everything that I did occurred in 2012. I'm covered by this policy. Argonaut's argument is basically, wait a minute, we have to look at the definition of wrongful act. The definition of wrongful act is seven pages later in the policy. You have to read through a lot of insurance company jargon. It's the last definition. And it includes language that establishes this weird relation back claim. The definition first reads that wrongful act means any act flowing from or originating out of a law enforcement activity. There isn't any question that these activities were law enforcement activities. So that part of the definition is redundant. The second part is what's at issue. All acts that are in any way directly or indirectly related either logically, causally or temporally shall be deemed to constitute one wrongful act regardless of the number of claims or claimants. And here's where Argonaut says that since count one, the wrongful detention occurred in 2011 before the policy went into effect. That's a related act. So we have to deem that as part of the wrongful act. And Argonaut's argument then necessarily has to go back to the coverage language and this term first committed that is included in the coverage language. And what does that mean? Argonaut's argument is, well, the wrongful detention occurred in 2011, so the wrongful act was first committed in 2011. And I think there are a couple of problems with the argument. First, it completely ignores the context of the very definition on which it relies. After conflating all related acts into one wrongful act, the definition includes a modifying clause, regardless of the number of claims or claimants. Now I doubt that an average person of common sensibility would be able to comprehend exactly what this was all about in any event. But a lawyer looks at that regardless of the number of claim or claimants and the inference is that this is a cap, a hard cap on liability. You can't stack based on claims. You can't stack based on claimants. If the policy coverage is a million dollars, then it's a million dollars and that applies for everything. So I don't think that county deputy would be able to process that information in any way, shape or form. And I don't think that county deputy would be able to understand that he has to look back at the coverage language to determine what first committed means in that particular context. And I do not think that's what the purpose of that language is. I'd refer you to Murray v. American Family, this Court's opinion, 429 F. 3rd, 757. And take away on one hand what the policy grants on the other hand. And that's exactly what Argonaut is trying to do here. The second problem with the definition of wrongful act is that applying the definition literally leads to the conflation of any related act with the claimed wrongful act. So if at 11.59 p.m. before the coverage goes into effect, a county deputy gets a call and has to respond to an incident and does so, and then is involved in an altercation that leads to civil rights claims against him, but that altercation occurred on 12.05 a.m. after the policy went into effect, well according to the literal terms of this policy, that claim would be excluded from coverage because the related act of getting into the patrol car and being disciplined and dispatched occurred prior to the policy's effective date. So we would submit that the essence of the argument that Argonaut is making is fundamentally flawed based on the language of the policy itself. And that is what really determines the outcome of this case. As far as the Lee Summit case goes, I do think it's dispositive. I don't mean to ignore it. I think it clearly states that in a wrongful prosecution case, a plaintiff's injury begins to flow when the underlying criminal charges are filed. And there isn't any dispute about that. Here, that was done on January 4, 2012, after the policy went into effect. Now, Mr. Bell made an argument that if Argonaut had known about these circumstances, these pending circumstances involving Freya, at 11.59 p.m. before the policy went into effect, they wouldn't have entered into the policy. I can't believe that's true according to his argument here tonight because with a relation back clause, Argonaut wouldn't have any coverage for that incident or whatever happened afterward. So again, we have another inconsistency. And I would just sum up with all of these uncertainties under the guidance of the Missouri Supreme Court have to be decided in favor of coverage. And that's what we would ask you to do. I don't have anything else to talk about. If you have any questions, I'd be happy to try to answer them. I don't see any. Thank you very much. And again, we're asking for affirmance of the district court's order. Thank you, Mr. Martin. Mr. Bell? Your Honors, I would like to address the argument that was raised by counsel regarding the interpretation of the policy and the issue of ambiguity in terms of the wrongful acts definition in that argument is that because there's an ambiguity that the policy must be construed in favor of coverage. The problem with that argument is that if there is an ambiguity, we're not saying there is, but that doesn't mean there's no coverage or that there is coverage. What that means is that it's construed, the language is construed favorably to the insured. And if that favorable construction provides coverage, then there will be coverage. It does not say that it's automatic. Here they're basically saying that the wrongful acts definition can be construed in two ways. One is that the acts must be wrongful. And two, that they could be negligent because it says all acts, errors or omissions. The acts on the facts of the case that we have today are that there were wrongful, improper, malicious acts that were committed in 2011. So regardless which interpretation you want to put on it, that the wrongful acts could include negligent acts or that the wrongful acts must be wrongful improper acts, still provides for no coverage under this circumstance. So we don't believe that the ambiguity argument favors coverage in this case. Getting back to the Lee's Summit case, again, the Lee's Summit case did involve different sets of facts and should be construed in the context of the facts that were present in that case. There was no allegation or assertion that there were any damages suffered by any party or the underlying plaintiff in that case prior to the filing of the criminal charges. For that reason, it's the first actual damage which must be looked at and gleaned from the case. Thank you, Your Honor. We request reversal of the summary judgment and judgment on the plaintiff in favor of Argonaut. Thank you, Mr. Bell. Thank you also, Mr. Martin. The Court appreciates the arguments you provided to the Court. We will take the case under advisement and render a decision in due course. Thank you.